ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
These attorney disciplinary proceedings arise from separate formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondents, Michael Kelly and Evelyn Kelly. Respondents are married and practice law together in the law firm of Kelly & Kelly, L.L.P. Because these proceedings involve some misconduct which is chargeable to both respondents, we have consolidated the cases in the interest of justice.
UNDERLYING FACTS
Misconduct Involving Mr. Kelly and Mrs. Kelly Jointly

The Harris Matter

In 1996, Alberta Harris retained Kelly & Kelly, L.L.P. to represent her on a contingency basis in a personal injury matter. Ms. Harris apparently considered Mrs. Kelly to be her attorney. However, the settlement negotiations in the case were conducted by Mr. Kelly.
Subsequently, the parties agreed to a settlement. The defendant-insurer issued a settlement check in the amount of $6,000, made payable to “Alberta Harris and her ^attorney Michael Kelly.” Mr. Kelly endorsed the check and it was deposited into the firm’s trust account.
On August 8, 1996, Mrs. Kelly issued a check drawn on the firm’s trust account to Ms. Harris in the amount of $3,881, representing Ms. Harris’ share of the settlement. Shortly after Mrs. Kelly issued the check to Ms. Harris, Mr. Kelly wrote a check in the amount of $2,000 on the trust account in connection with a separate client matter being handled by the firm.[1] *453 The issuance of the check caused the funds in the firm’s trust account to fall below the amount of the check issued to Ms. Harris. As a result, when Ms. Harris presented the check for payment, it was dishonored for non-sufficient funds on two separate occasions.[2] Mrs. Kelly later indicated she was unaware of any problems with Ms. Harris’ check, because all of the firm’s financial matters were handled by Mr. Kelly. Mr. Kelly stipulated he was the managing partner of the firm.
After the check was dishonored, Ms. Harris made numerous efforts to communicate with Mrs. Kelly, but was unsuccessful. Approximately three months later, in November 1996, Ms. Harris filed a complaint with the ODC. Mrs. Kelly responded to the complaint in January 1997. At that time, she admitted there were insufficient funds in the firm’s trust account to cover Ms. Harris’ check. Mrs. Kelly apologized for the misconduct, stating she had “been trying to make the check good.” On April 28, 1998, approximately eighteen months after the settlement disbursement check was issued, Mrs. Kelly provided restitution to Ms. Harris.
| ¡¡Misconduct Involving Mr. Kelly Only

The Breakfield Matter

In June 1997, Stephen and Janice Breakfield of Kansas City, Missouri retained Mr. Kelly to represent them in child custody proceedings. Mr. Kelly filed a motion seeking a hearing on the matter, which the court scheduled for December 4, 1997. Without verifying whether service of process had ever been effectuated on opposing counsel, Mr. Kelly directed his clients, who are of modest means, to fly from Kansas for the hearing. At the scheduled hearing, the court continued the matter without date based on lack of service.[3] Subsequently, Mr. Kelly neglected the legal matter. He also failed to communicate with his clients, refusing to respond to their correspondence and telephone calls for approximately six months relative to the status of the case and their efforts to proceed informa pawperis. Their child custody matter had still not been resolved as of April 2001, almost four years after he was retained.

Christoval Matter

In 1998, Katrina Christoval and several other students of Grambling State University’s Nursing School retained Mr. Kelly to institute a lawsuit against the school based on racial discrimination. Thereafter, Mr. Kelly failed to expedite the matter, and failed to respond to his clients’ reasonable requests for information regarding the status and progress of their case.
In October 1998, Ms. Christoval’s mother filed a complaint with the ODC, alleging Mr. Kelly failed to communicate and neglected the legal matter. Respondent gave a sworn statement in connection with the investigation, and produced several letters he had forwarded to Ms. Christoval during 1998. Respondent testified he had ^periodic meetings with the students, until which time they left town. At that point, the meetings stopped or were attended sporadically.

Washington Matter

The ODC received a complaint from Susan Rene Washington, one of Mr. Kelly’s *454 clients.[4] The ODC requested a response from Mr. Kelly. Mr. Kelly failed to comply with the request. As a result, the ODC was required to issue a subpoena compelling his cooperation in the matter.
Misconduct Involving Mrs. Kelly Only

Social Security Matter

Mrs. Kelly represented two clients, Willie J. Pitts and Annie M. Hawkins, in matters before the Social Security Administration (“SSA”). She collected fees in the amount of $2,675 from Mr. Pitts and $949.85 from Ms. Hawkins. The $2,675 fee Mrs. Kelly charged to Mr. Pitts was in excess of the $1,500 fee approved by the SSA. The $949.85 fee she charged to Ms. Hawkins was not approved by the SSA.
Shortly thereafter, Mrs. Kelly was advised by employees of the SSA that she charged improper fees. She was directed to return the unauthorized fees. When Mrs. Kelly failed to do so, the matter was referred to a special prosecutor.
After hearing, the administrative law judge disqualified Mrs. Kelly from handling SSA matters. In a written decision, the administrative law judge found respondent violated numerous rules and regulations of the SSA in her representation of claims when she “knowingly charged and collected a fee of $2,675 from Willie J. Pitts, which was $1,175 in excess of the approved amount of $1,500 ... [and] knowingly charged frand collected a fee of $949.85 from Ms. Annie M. Hawkins, which was not approved by the SSA ...”[5] In mitigation, the judge recognized Mrs. Kelly’s clients had no complaints about the quality of then- representations and that Mrs. Kelly may not have been experienced in SSA matters. Nonetheless, the judge imposed the disqualification based on Mrs. Kelly’s failure to comply with repeated requests to return the fees.
The Appeals Council of the SSA affirmed the disqualification.[6] In its written decision, the Appeals Council determined a “severe penalty was mandated” because Mrs. Kelly “was repeatedly advised by various SSA employees to return all unauthorized fees and that failure to do so could subject her to disqualification or suspension from practicing before SSA.” It recognized the delay in providing restitution to Mr. Pitts was “detrimental.” As to the Hawkins matter, the Appeals Council found that as of the date of its decision, Mrs. Kelly had not presented any evidence of restitution of the unauthorized fee.
Upon notice by the SSA of Mrs. Kelly’s disqualification, the ODC instituted a disciplinary investigation. Mrs. Kelly denied any intentional misconduct in connection with the fees, but admitted that she made “errors” concerning the calculation of fees. She also stated that she provided restitution to Ms. Hawkins.
DISCIPLINARY PROCEEDINGS

Formal Charges

Mr. Kelly
The ODC filed four counts of formal charges against Mr. Kelly, based on his 16conduct in the Harris matter, the Break-field matter, the Christoval matter and the *455 Washington matter. In the Harris matter, the ODC alleged Mr. Kelly violated Rule 1.15 by commingling and converting Ms. Harris’ funds and failing to promptly deliver these funds to her. The ODC alleged Mr. Kelly failed to represent his clients in the Breakfield matter with diligence in violation of Rule 1.3, failed to communicate with them in violation of Rule 1.4 and failed to expedite their litigation in violation of Rule 3.2. In the Christoval matter, the ODC alleged Mr. Kelly failed to expedite the litigation in violation of Rule 3.2. Finally, as to the Washington matter, the ODC alleged Mr. Kelly failed to cooperate in the investigation, in violation of Rule 8.4.
Mr. Kelly filed an answer denying the misconduct and the matter against him proceeded to a formal hearing.
Mrs. Kelly
The ODC filed two counts of formal charges against Mrs. Kelly based on her actions in the Harris matter and the Social Security matter. In the Harris matter, the ODC alleged Mrs. Kelly violated Rule 1.15 by commingling and converting Ms. Harris’ funds and failing to promptly deliver these funds to her, and violated rule 1.4 by failing to communicate with her client. In the Social Security matter, the ODC alleged Mrs. Kelly failed to provide competent representation to her client in violation of Rule 1.1(a), charged an excessive fee in violation of Rule 1.5(a) and violated the rules of a tribunal in violation of Rule 3.4(a).
Mrs. Kelly entered into a stipulation of facts with the ODC, and the matter against her proceeded to a hearing on the issue of mitigation.
| tRecommendation of the Hearing Committees
Separate hearings were conducted in committees. One committee heard the charges against Mr. Kelly involving the Breakfield, Christoval and Washington matters; a separate committee heard the charges against Mr. and Mrs. Kelly arising out of the Harris matter.[7]
Mr. Kelly
As to the Breakfield, Christoval and Washington matters, the committee found Mr. Kelly admitted to these charges during the formal hearing. In determining an appropriate sanction, the committee observed Mr. Kelly’s conduct toward his clients was “extremely inattentive, to say the least.” However, the committee acknowledged that Mr. Kelly did not completely abandon his clients. The committee found no aggravating factors, and identified full and free disclosure to the ODC and a cooperative attitude as mitigating factors. The committee concluded the appropriate sanction for Mr. Kelly’s misconduct was a public reprimand.
In the Harris matter, the committee found Mr. Kelly stipulated to the misconduct, and therefore concluded it was proven he commingled and converted client funds in violation of Rule 1.15 and failed to cooperate in violation of Rule 8.4. As aggravating factors, the committee found there was vulnerability of the victim and a delay in making restitution. In mitigation, the committee found Mr. Kelly made restitution and demonstrated remorse for his actions. The committee concluded the appropriate sanction for this misconduct was a six-month suspension, fully deferred, followed by a one year period of supervised probation.
*456 [sMrs. Kelly
Based on Mrs. Kelly’s stipulation, the committee found she violated the professional rules as charged in the Harris and Social Security matters. As aggravating factors, the committee identified multiple offenses, refusal to acknowledge the wrongful nature of the conduct, imposition of other sanctions, vulnerability of the victims and indifference in making restitution. As mitigating factors, the committee found Mrs. Kelly had no prior disciplinary record and demonstrated remorse. It also recognized Mrs. Kelly experienced personal and emotional problems during the time of the misconduct.[8] The committee concluded the appropriate sanction for Mrs. Kelly’s misconduct was a suspension from the practice of law for a period of one year and one day, followed by a period of probation of no less than eighteen months subject to conditions.

Recommendations of the Disciplinary Board

A single panel of the disciplinary board heard both the matters against Mr. and Mrs. Kelly. However, the board allowed the parties to present their arguments separately, and the board issued separate opinions.
Mr. Kelly
The board found Mr. Kelly violated duties owed to his clients, to the legal system and as a professional. It found Mr. Kelly’s failure to communicate in the Breakfield matter was knowing, but found the balance of his other misconduct was negligence. The board found the Break-fields were harmed because they were required |9to expend funds in a trial that respondent should have known would not go forward, as well as by the ongoing delay in the resolution of their case. As to Ms. Christoval’s case, the board noted that it remained unresolved. It also found Mr. Kelly caused harm to Ms. Harris through the deprivation of her funds.
Addressing the issue of sanctions, the board relied on the ABA’s Standards for Imposing Lawyer Sanctions to conclude the appropriate baseline sanction for respondent’s misconduct is suspension.[9] As aggravating factors, it recognized vulnerability of victims, obstruction of the disciplinary proceedings by failing to comply with the rules of the disciplinary agency, and indifference to making restitution. In mitigation, it considered Mr. Kelly’s lack of a prior disciplinary record, remorse, absence of a dishonest or selfish motive and full and free disclosure to the disciplinary board. The board concluded the appropriate sanction for Mr. Kelly’s misconduct was a six-month suspension, with four months deferred, subject to a two-year period of probation with conditions.
Mrs. Kelly
The board found Mrs. Kelly violated duties she owed to her clients, to the legal system and as a professional. It con- *457 eluded she negligently commingled and converted client funds and failed to communicate with Ms. Harris. It found she knowingly failed to promptly disburse Ms. Harris’ funds, causing injury by depriving her of her funds for over a year. The board determined Mrs. Kelly caused injury to Mr. Pitts and Ms. |inHawkins by depriving them of their funds. It found her incompetence and failure to heed the several warnings of the SSA staff was at the expense of her disqualification, causing injury to the legal system and the profession.
Addressing the issue of sanctions, the board relied on the ABA’s Standards for Imposing Lawyer Sanctions to conclude the appropriate baseline sanction for respondent’s misconduct is suspension.[10] It adopted the aggravating and mitigating factors cited by the hearing committee. Considering the record, it found the appropriate sanction was a suspension from the practice of law for a period of fifteen months, nine months deferred, followed by an eighteen-month period of probation with conditions.
The ODC filed an objection to the sanction recommended by the disciplinary board in Mrs. Kelly’s case, resulting in that case being docketed for oral argument. Although no timely objection was filed in Mr. Kelly’s case, this court, on its own motion, directed that Mr. Kelly’s case be scheduled for oral argument together with Mrs. Kelly’s case.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an Inindependent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992).
Mr. and Mrs. Kelly have stipulated to the misconduct at issue. Based on these stipulations and the supporting evidence in the record, we conclude the misconduct has been proven by clear and convincing evidence. We turn to a determination of the appropriate sanction for this misconduct.
In addressing the issue of sanctions, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: *458 Lain, 00-0148 (La.5/26/00), 760 So.2d 1152. The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 889.
Mr. Kelly’s neglect of client matters in the Breakfield and Christoval matters and Mrs. Kelly’s actions in the Social Security matters resulted in harm to their respective clients. Clearly, however, the most serious misconduct in this matter arises from respondents’ commingling and conversion of client funds in the Harris matter. While it is debatable which of the two respondents is more culpable in this matter, it suffices to say that both respondents shared the responsibility to ensure that Ms. Harris’ funds were properly remitted to her. Their failure to do so for a significant period of time represents a serious breach of their professional obligations as a member of the bar | iaof this state. Considering respondents’ misconduct as a whole, we find the baseline sanction is an actual period of suspension from the practice of law.
Nonetheless, we recognize respondents’ misconduct in this case appears to be largely the product of negligence and does not result from an intentional desire by respondents to cause harm to their clients. Numerous mitigating factors are present, including respondents’ cooperative attitude toward these proceedings and their genuine demonstration of remorse.
Under these circumstances, we conclude the appropriate sanction for the respondents’ misconduct is a suspension from the practice of law for a period of six months.
DECREE
For the reasons assigned, it is ordered that Michael Wayne Kelly, Louisiana Bar Roll No. 28159, be suspended from the practice of law for a period of six months, to commence from the finality of this judgment. It is ordered that Evelyn Denise Kelly, Louisiana Bar Roll No. 20457, be suspended from the practice of law for a period of six months, to commence six months from the finality of this judgment. All costs and expenses in the matter are assessed against respondents in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The check represented a payment to a client whose funds had been held in escrow pending resolution of a social security matter.

. While the formal charges assert the check was declined on three separate occasions for insufficiency of funds, the parties stipulated it was returned only two times.

. Although Mr. Kelly admitted to failing to confirm whether service was effectuated, he maintained the failure to effectuate service to be the fault of the sheriff's office and not his own.

. The merits of the complaint are not at issue.

. The administrative law judge found Mrs. Kelly’s actions violated 42 U.S.C. § 406(a) and § 1383(d), and 20 C.F.R. § 404.1720(b), § 404.1740(b), § 416.1520(b) and § 416.1540(b).

.The administrative law judge imposed a "conditional disqualification,” which would convert to a two-year suspension upon Mrs. Kelly’s return of the unauthorized fee. The Appeals Council found no legal authority for a conditional disqualification and converted it to a disqualification.

. The charges in the Harris matter against Mr. Kelly and Mrs. Kelly were initially consolidated. Mrs. Kelly moved for separate hearings, which the committee granted.

. The committee found that during the time of the misconduct, Mrs. Kelly worked full-time, was pregnant on three occasions and was caring for three children from a prior marriage, one of which is extremely disabled. In addition, she unsuccessfully campaigned for a judgeship.

. Standard 4.12 provides suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. Standard 4.42 provides suspension is generally appropriate when a lawyer fails to perform services for a client or engages in a pattern of neglect and causes injury or potential injury to a client. Standard 7.2 provides suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes serious or potentially serious injury to a client, the public, or the legal system.

. Standard 4.12 provides suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. Standard 4.43 provides reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client. Standard 4.53 provides reprimand is generally appropriate when a lawyer demonstrated a failure to understand relevant legal doctrines or procedures or is negligent in determining whether he or she is competent to handle a legal matter, and causes injury or potential injury to a client. Standard 6.22 provides suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding. Standard 7.3 provides reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal profession.