998 So.2d 40 (2008)
In re Kym Krystyna KELLER.
No. 2008-B-1080.
Supreme Court of Louisiana.
December 12, 2008.
*42 Charles Bennett Plattsmier, Baton Rouge, Rodney Bancroft Hastings, for applicant.
Kym Krystyna Keller, for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Kym Krystyna Keller, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In August 2005, Kelly Faris retained respondent to assist her in negotiating a lease termination agreement with her landlord, Chris Smith. Ms. Faris paid respondent $200 at the outset of the representation.
In mid-August 2005, the parties finalized the agreement, and Mr. Smith provided respondent with a check for $4,200,[1] which was made payable to respondent with the notation "Deposit in Trust Account for Kelly Faris." Respondent received the check at some point in late August 2005, but she did not have the opportunity to deposit the check into her client trust account before she evacuated ahead of Hurricane Katrina, which made landfall in New Orleans on August 29, 2005. However, respondent did take the check with her when she evacuated to Baton Rouge. Her home and office in the Lakeview area of New Orleans were subsequently flooded following Katrina.
On August 31, 2005, respondent cashed the $4,200 check but did not place the funds into her trust account. On September 9, 2005, respondent prepared a statement of services rendered, indicating that her attorney's fee for handling the lease termination matter was $1,250. Respondent also prepared a release for Ms. Faris to sign, indicating that the $1,250 fee would be deducted from the $4,200 check and Ms. Faris would receive the balance, $2,950, with the knowledge that Mr. Smith may request the return of the entire $5,000, which Ms. Faris would be solely responsible for repaying.[2]
Ms. Faris refused to sign the release and filed a complaint against respondent with the ODC in November 2005. The matter was then referred to the Louisiana State Bar Association ("LSBA") for arbitration. In February 2006, in conjunction with the arbitration proceedings, respondent forwarded a cashier's check to Ms. Faris in the amount of $2,950, representing the undisputed portion of the $4,200 check. Thereafter, the LSBA referred the matter back to the ODC because the $4,200 had never been placed in respondent's trust account. In January 2008, following the hearing committee's recommendation *43 in this matter, respondent refunded the remaining $1,250 to Ms. Faris.

DISCIPLINARY PROCEEDINGS
In 2006, the ODC filed formal charges against respondent, alleging that her conduct violated Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(d) (failure to promptly deliver funds to a client or third person), 1.15(e) (failure to place disputed funds in a trust account), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Respondent initially failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). Soon thereafter, counsel enrolled on behalf of respondent and filed an answer to the formal charges, denying any misconduct. Counsel also filed a motion to recall the deemed admitted order, which motion was granted.
In 2007, the ODC filed amended formal charges, adding additional alleged rule violations but no new factual allegations. Respondent, through counsel, answered the amended formal charges, again denying any misconduct. However, in an amended answer to the amended formal charges, respondent admitted that she violated Rules 1.15(a) and 1.15(e). This matter then proceeded to a formal hearing on the merits.

Hearing Committee Report
After considering the evidence presented at the hearing and the testimony of the witnesses, the hearing committee made the following factual findings:
1) In August 2005, Ms. Faris retained respondent to represent her in connection with a lease termination agreement with Mr. Smith;
2) Ms. Faris paid $200 when she first retained respondent;
3) On or about August 18, 2005, the parties reached accord on the lease termination agreement;
4) On or about August 18, 2005, Mr. Smith provided respondent with a settlement check in the amount of $4,200;
5) The check issued by Mr. Smith was made payable to respondent but included a notation: "Deposit in Trust Account for Kelly Faris";
6) The threat and subsequent damage caused by Katrina prevented Ms. Faris from completing her move;
7) Respondent did not deposit the check into her trust account prior to evacuating in connection with Katrina;
8) Respondent took the check with her when she evacuated to Baton Rouge on Saturday, August 27, 2005;
9) Respondent's home and home office were located in the Lakeview area of New Orleans and were totally destroyed as a result of the levee failure following Katrina's passage;
10) On August 31, 2005, respondent cashed the $4,200 check at a Baton Rouge branch of AmSouth Bank, the issuing bank;
11) Prior to September 9, 2005, Ms. Faris made several attempts to obtain the proceeds from the check;
12) On September 9, 2005, respondent prepared and mailed Ms. Faris a statement of services rendered, indicating that Ms. Faris owed respondent $1,250 in additional attorney's fees;

*44 13) On November 4, 2005, the ODC received a complaint against respondent filed by Ms. Faris;
14) On November 7, 2005, the matter was referred to the LSBA for submission to fee dispute arbitration;
15) On or about February 13, 2006, respondent provided Ms. Faris with a cashier's check in the amount of $2,950 from Chase Bank, which represented the undisputed portion of the funds due Ms. Faris;
16) On May 2, 2006, the LSBA referred the matter back to the ODC;
17) Although respondent received notice of the complaint, she failed or neglected to provide a written response;
18) Respondent admitted violating Rules 1.15(a), 1.15(e), and 8.1(c)[[3]] of the Rules of Professional Conduct; and
19) Respondent did not violate Rules 8.4(b) and 8.4(c) of the Rules of Professional Conduct because the related factual allegations were not proven by clear and convincing evidence.
Based on these findings, the committee determined that respondent violated Rules 1.15(a), 1.15(d), 1.15(e), and 8.1(c) of the Rules of Professional Conduct. Respondent failed to properly safeguard Ms. Faris' funds by placing them in a trust account. She also failed to promptly deliver the undisputed portion of the funds to Ms. Faris. Finally, she failed to cooperate with the ODC in its investigation of Ms. Faris' complaint.
The committee determined that the baseline sanction in this matter is a one-year suspension. In aggravation, the committee found bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency and substantial experience in the practice of law (admitted 1995). In mitigation, the committee found the following factors: absence of a prior disciplinary record, personal or emotional problems, inexperience in the solo practice of law (began solo practice four months before Katrina), and character or reputation. The committee also found that respondent's behavior was greatly influenced by the unprecedented circumstances caused by Katrina and the subsequent levee breaks.
Considering these findings, the committee recommended that respondent be suspended from the practice of law for one year, fully deferred, subject to participation in fee arbitration through the LSBA and attendance at the LSBA's Ethics School and Trust Accounting School.
Respondent filed an objection to the hearing committee's report and recommendation. Although the ODC did not file an objection, it its brief to the disciplinary board, it indicated that respondent should receive an eighteen-month suspension.

Disciplinary Board Recommendation
After review, the disciplinary board found that the hearing committee's factual findings are not manifestly erroneous, except those findings that allegedly support a violation of Rule 1.15(d). The board found that respondent did not violate Rule 1.15(d), which requires a lawyer to promptly deliver funds to a client, because it was reasonable for respondent to require Ms. Faris to sign a release before releasing the undisputed portion of the funds. Furthermore, the board determined that it was *45 reasonable for respondent to withhold her fees as part of the release because respondent's testimony regarding the existence of a fee agreement was believable and Ms. Faris lacked credibility as a witness.
The board agreed with the committee that respondent violated Rules 1.15(a), 1.15(e), and 8.1(c). She cashed the settlement check instead of depositing it into a trust account; she did not place the disputed portion of the funds in a trust account; and she failed to respond to the ODC's correspondence and failed to timely answer the formal charges before hiring counsel. The board also agreed with the committee that respondent did not violate Rules 8.4(b) and 8.4(c).
The board found that respondent knowingly violated duties owed to her client and the legal profession. The board determined that the aggravating factors of bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency and substantial experience in the practice of law are present. The board found the following mitigating factors: absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, character or reputation, and remorse.
Under these circumstances, the board recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to six months of unsupervised probation. The board also recommended that respondent attend the LSBA's Ethics School and Trust Accounting School.
Both respondent and the ODC filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record reveals that in the days after Hurricane Katrina, respondent cashed her client's $4,200 settlement check instead of depositing the check into her client trust account. She then deposited the cash into her personal checking account. Respondent admitted that she probably used these funds for her own purposes before she returned the funds to her client. There is no doubt that respondent commingled client funds with her personal funds and converted client funds, in violation of Rule 1.15 of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and *46 the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Intentional conversion of client funds is among the most serious professional misconduct a lawyer can commit, and we have not hesitated to disbar or even permanently disbar attorneys who convert client funds with a dishonest or selfish motive. See, e.g., In re: Carr, 03-3138 (La.5/25/04), 874 So.2d 823. However, in cases where the attorney's conversion is negligent in nature, is not done with any dishonest or selfish motive, and does not cause any significant client harm, we have imposed considerably more lenient sanctions. See In re: Michael Wayne Kelly and Evelyn C. Kelly, 03-0287, 03-0509 (La.10/21/03), 857 So.2d 451 (lawyers suspended for six months for failing to promptly remit funds to their client, thereby converting the funds; conduct was largely the product of negligence and did not result from an intentional desire by the respondents to cause harm to the client); In re: Dobbins, 01-2022 (La.1/15/02), 805 So.2d 133 (lawyer suspended for one year, with all but six months deferred, for negligently converting his client's settlement funds; significant mitigating factors present); In re: Jones, 98-0971 (La.11/6/98), 721 So.2d 850 (lawyer suspended for one year, with all but two months deferred, for allowing the balance of his client trust account to fall below the amount owed to his client; no dishonest motive on the respondent's part).
We believe the facts of the instant case support a finding that respondent's conversion was largely negligent in nature. The record establishes that at the time respondent cashed Ms. Faris' settlement check, she was subject to the extreme stress and unprecedented disruption occasioned by Hurricane Katrina. Rather than acting with a dishonest or selfish motive, respondent's testimony indicates her decision to cash the check was motivated by an attempt to protect her client's interests.[4] Although respondent's state of mind does not excuse her violation, it is a factor to be considered in imposing discipline. See In re: Yonter, 05-1737 (La.6/2/06), 930 So.2d 956 ("[w]e emphasize that respondent's belief that he was acting in his clients' best interest in no way excuses his misconduct, but may serve to illuminate his motives for purposes of mitigation.").
We also find respondent's client did not suffer any significant harm from respondent's actions. Although respondent held the fees for approximately five months, much of this delay resulted from Ms. Faris' refusal to sign the release. Ultimately, respondent made full restitution to Ms. Faris, even refunding the portion of the fees which represented her fully earned attorney's fees.
Moreover, we are cognizant of several mitigating factors. Respondent has no prior disciplinary offenses and has a good reputation in the community. She has demonstrated remorse for her actions. Most significantly, respondent suffered *47 personal problems at the time of the misconduct due the destruction of her home and office as a result of Hurricane Katrina.
Under all these circumstances, we find the appropriate sanction for respondent's misconduct is a one-year suspension from the practice of law. However, in light of the mitigating circumstances, we will defer all but six months of the suspension. Following the completion of the active portion of her suspension, respondent shall be placed on unsupervised probation for a period of one year, during which time she shall be required to attend the Ethics School and Trust Accounting School offered by the LSBA's Practice Assistance and Improvement Committee.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Kym Krystyna Keller, Louisiana Bar Roll number 23808, be and she hereby is suspended from the practice of law for a period of one year. It is further ordered that all but six months of the suspension shall be deferred. Following completion of the active portion of her suspension, respondent shall be placed on unsupervised probation for one year governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
VICTORY, J., dissents and assigns reasons.
WEIMER, J., concurs in part and dissents in part with reasons.
VICTORY, J., dissenting.
I agree with the statements made by Justice Weimer in his opinion in which he concurs in part and dissents in part. I also agree with both the hearing committee and the Disciplinary Board that any sanction imposed should be fully deferred.
WEIMER, J., concurring in part and dissenting in part.
While I agree a one-year suspension is an appropriate sanction, I would defer the sanction in its entirety. This matter represents the only blemish on the legal career of an attorney which occurred immediately following the turmoil surrounding Hurricane Katrina. Given the upheaval respondent experienced following Katrina and the fact her home and law office were destroyed by the hurricane, I believe she acted negligently, not knowingly. But for the unprecedented events caused by Katrina, I am convinced she would not have engaged in this conduct.
In mitigation, there were findings of an absence of a prior disciplinary record, personal or emotional problems, inexperience in the solo practice of law (began solo practice four months before Katrina), good character and reputation, and remorse.
The Disciplinary Board found the respondent acted reasonably in requiring the complainant to sign a release, finding the complainant lacked credibility as a witness because she had a history of not telling the truth and being manipulative. Full restitution was made to the complainant and *48 respondent also relinquished most of her earned fee to the complainant.
Significantly, both the hearing committee and the disciplinary board recommended the sanction be fully deferred. Taking the totality of the circumstances into consideration, I agree a fully deferred suspension is appropriate.
For other cases imposing fully deferred suspensions in similar situations, see In re: Pizzolatto, 04-1931 (La. 10/1/04), 883 So.2d 438 (lawyer suspended from the practice of law for six months, fully deferred, subject to a two-year period of probation with conditions for allowing his trust account to become overdrawn, thereby converting client funds; no evidence of client harm); In re: Cicardo, 04-0828 (La.7/2/04), 877 So.2d 980 (lawyer suspended for one year, fully deferred, followed by probation, for "borrowing" funds from his trust account from time to time to fund the operations of his law practice; no evidence of actual harm to clients); In re: Broussard, 02-1670 (La.9/30/02), 827 So.2d 1133 (lawyer suspended for six months, fully deferred, followed by probation for allowing the balance in his client trust account to fall below the amount owed to his clients; no evidence of significant client harm).
NOTES
[1] Mr. Smith had offered Ms. Faris $5,000 to terminate her lease early. However, because Ms. Faris stopped payment on her August rent check in the amount of $800, the parties agreed that Mr. Smith would pay Ms. Faris the balance of $4,200.
[2] Ms. Faris' apartment had been completely destroyed by Hurricane Katrina. Respondent therefore included language in the release explaining to Ms. Faris that the destruction of the object of the original lease may have in turn voided the lease termination agreement.
[3] In respondent's answer to the formal charges, she admitted that she failed to promptly respond to the ODC's inquiries. However, she offered as a mitigating factor her inability to deal with the aftermath of Katrina and indicated that she has cooperated since hiring counsel. She never specifically admitted to violating Rule 8.1(c).
[4] In particular, respondent testified that she felt time was of the essence. Because Hurricane Katrina had constructively evicted Ms. Faris from Mr. Smith's apartment, respondent felt Mr. Smith no longer had any reason to pay Ms. Faris to vacate the apartment and feared Mr. Smith would stop payment on the check. In an effort to hasten the remittance of the funds to Ms. Faris, respondent indicated she cashed the check instead of depositing it into her trust account. Her plan was to wire the money to Ms. Faris immediately. However, she did not anticipate that Ms. Faris would refuse to sign the release, which would require her to hold the funds for an extended period of time.