32 So.3d 789 (2010)
In re John T. SCOTT.
No. 2009-B-2364.
Supreme Court of Louisiana.
April 5, 2010.

*790 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[1]
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, John T. Scott, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS AND PROCEDURAL HISTORY
The underlying facts of this matter are not in dispute, having been stipulated to by the parties.
Respondent represented John Kelly in a workers' compensation matter. In December 2004, respondent reached a settlement agreement with the defendant which provided for a lump sum settlement of $75,000. The workers' compensation hearing officer approved the settlement and ordered the funds disbursed to the client, as appropriate under the agreed settlement.
Instead of disbursing the entire amount as ordered, respondent deducted $9,500 as his fee and only disbursed $15,000 to Mr. Kelly. Respondent falsely informed Mr. Kelly that he was trying to secure the remainder of the $75,000 and converted those funds to his own use to pay his personal and business obligations.
Approximately three months later, Mr. Kelly became dissatisfied with respondent's alleged failure to obtain the remaining funds and complained to the workers' compensation hearing officer. When the hearing officer confronted respondent, he acknowledged that he had improperly retained Mr. Kelly's funds. The hearing officer instructed respondent to pay Mr. Kelly the balance of the funds within fourteen days and to refund to Mr. Kelly the $9,500 in attorney's fees he had deducted. Respondent complied.

DISCIPLINARY PROCEEDINGS
In April 2005, the workers' compensation hearing officer filed a complaint against respondent with the ODC. In October 2008, the ODC filed one count of formal charges, alleging respondent's conduct in the Kelly matter violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(c) (contingency fee agreements), 1.15 (safekeeping property of clients or third persons), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered the formal charges and denied any misconduct.
This matter proceeded to a formal hearing on the merits. The parties introduced a joint stipulation of facts, wherein respondent stipulated to the above facts and stipulated that he violated the Rules of Professional Conduct as alleged in the formal charges. Respondent also testified on his own behalf and on cross-examination by the ODC. In his testimony, respondent admitted that he "made a bad choice" when he converted Mr. Kelly's settlement funds. Respondent explained that he was having financial problems at the time, primarily related to his law practice, but expressed remorse and contrition for his conduct and stated that he would not convert client funds to his own use in the future. He further testified that at the time of the conversion, his wife had just been diagnosed *791 with uterine cancer, and he did not want to discuss his financial issues with her while she was undergoing medical treatment and did not want to ask her to sign documents to refinance their mortgage. Respondent also testified that his son was having shoulder problems, which could affect his chances of getting a swimming scholarship, and he was also experiencing his own shoulder problems and pain.[2]

Hearing Committee Report
After considering the testimony presented at the hearing, the hearing committee accepted the joint stipulation of facts as its factual findings. The committee also found respondent's testimony was credible. Based on these factual findings, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee determined respondent knowingly failed to disburse Mr. Kelly's funds to him but did not do so with the intent to permanently deprive Mr. Kelly of his funds. Rather, the committee believed respondent would have disbursed all of the funds due Mr. Kelly, after he refinanced his house, even without being ordered to do so by the judge. The committee also believed respondent will not convert client funds in the future.
In aggravation, the committee found vulnerability of the victim and substantial experience in the practice of law (admitted 1984). In mitigation, the committee found the following factors: absence of a prior disciplinary record, timely good faith effort to make restitution, and a cooperative attitude toward the disciplinary proceeding.
The committee determined that respondent's conduct was similar to the misconduct in In re: Keller, 08-1080 (La.12/12/08), 998 So.2d 40, wherein an attorney converted her client's funds to her own use during a time of extreme stress and disruption caused by Hurricane Katrina.[3] Likewise, in the instant case, the committee reasoned respondent was under extreme stress when his wife was diagnosed with uterine cancer and while he and his son were suffering from shoulder problems. The committee further found that "[r]espondent's conduct was intentional and not negligent as in Keller."
Despite the fact that the court imposed an actual period of suspension in Keller, the committee recommended that respondent be suspended from the practice of law for three years, fully deferred, subject to a three-year period of supervised probation.
The ODC filed an objection to the committee's recommendation. The ODC asserted that a fully deferred suspension is too lenient for respondent's misconduct and that the probationary period cannot exceed two years under the provisions of Supreme Court Rule XIX.

Disciplinary Board Recommendation
After reviewing this matter, the disciplinary board accepted the hearing committee's factual findings and application of the Rules of Professional Conduct. The board determined that respondent violated duties owed to his client, the legal system, and the legal profession. With respect to respondent's mental state, the board found he acted intentionally, as opposed to knowingly, when he converted Mr. Kelly's funds to his own use. However, the board agreed with the committee that respondent *792 did not intend to permanently deprive Mr. Kelly of his money. Furthermore, respondent's intentional conduct caused actual harm to Mr. Kelly by depriving him of his funds for three months. After considering the ABA's Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
The board found the following aggravating factors present: a dishonest or selfish motive, vulnerability of the victim, and substantial experience in the practice of law. The board found the following mitigating factors present: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution, a cooperative attitude toward the proceedings, imposition of other penalties or sanctions, delay in the disciplinary proceedings, and remorse.
After reviewing prior jurisprudence involving similar misconduct and mitigating factors, the board recommended respondent be suspended from the practice of law for three years, with all but six months deferred, followed by two years of supervised probation.
Although neither respondent nor the ODC filed an objection to the board's recommendation, on February 24, 2010, we ordered briefing addressing the issue of an appropriate sanction. The ODC filed a brief; respondent sent a letter to the clerk's office indicating that he would not be submitting a brief.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
The facts of this case are not disputed and have been stipulated by respondent. Essentially, respondent intentionally converted to his own use more than $50,000 of his client's workers' compensation settlement funds, and he intentionally misled his client about the status of the funds. Such conduct constitutes a violation of Rules 1.3, 1.4, 1.15, and 8.4(c) of the Rules of Professional Conduct, as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Because respondent has clearly engaged in misconduct, the sole question presented to the court is the appropriate sanction to be imposed. As in other conversion cases, we consult Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986), to establish the baseline sanction. In Hinrichs, we determined that disbarment is appropriate in case involving the following conduct:
In a typical case of disbarment for violation of [Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; *793 the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
Applying the guidelines of Hinrichs, we find the baseline sanction in this case is disbarment. Respondent acted intentionally and committed a dishonest act by misleading Mr. Kelly as to the status of his settlement funds. Additionally, he caused actual harm to Mr. Kelly by depriving him of a substantial amount of funds for over three months, and he only made restitution after being ordered to do so by the workers' compensation hearing officer.
The mitigating factors present are: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution, a cooperative attitude toward the proceedings, imposition of other penalties or sanctions, delay in the disciplinary proceedings, and remorse. Considering the numerous mitigating circumstances, we will deviate downward from the baseline sanction of disbarment and impose a three-year suspension from the practice of law.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that John T. Scott, Louisiana Bar Roll number 14894, be and he hereby is suspended from the practice of law for a period of three years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
KNOLL, J., dissents and would disbar respondent.
WEIMER, J., concurs in part and dissents in part and assigns reasons.
KNOLL, Justice, dissenting.
I dissent and would disbar respondent.
WEIMER, J., concurring in part; dissenting in part.
While I agree a three-year suspension is appropriate, I would defer a portion of the suspension noting the hearing committee recommended the suspension be fully deferred and the disciplinary board recommended all but six months be deferred. I also note both the hearing committee and the disciplinary board specifically found that respondent did not intend to permanently deprive the client of his money. While the actions of the respondent are clearly wrong and unacceptable, deferring a portion of his suspension would serve the purposes of the disciplinary system.
NOTES
[1] Chief Justice Kimball not participating in the opinion.
[2] Respondent also testified that his financial problems were related to bank loans coming due and not medical bills.
[3] In Keller, the court imposed a one-year suspension from the practice of law, with all but six months deferred, followed by one year of unsupervised probation with conditions.