ATTORNEY DISCIPLINARY PROCEEDING
PER CURIAM
| iThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, James E. Moorman, III, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed in October 2013. In re: Moorman, 13-2430 (La. 10/21/13), 128 So.3d 268.
UNDERLYING FACTS AND PROCEDURAL HISTORY
By way of background, the misconduct at issue in this proceeding occurred over a three-month period of time in 2013, while respondent was experiencing severe depression. In August 2013, members of the judiciary and friends in the legal community conducted an intervention. Thereafter, respondent was admitted to the Ridgeview Institute (“Ridgeview”) for inpatient treatment. During his treatment, respondent contacted the Judges and Lawyers Assistance Program (“JLAP”) and voluntarily *317 surrendered his law license. Following his initial treatment for depression, respondent was transferred to the inpatient addiction program at Ridgeview, where he remained until he was discharged in December 2013. He discontinued his contract with JLAP in November 2013.
lain December 2015, the ODC filed eleven counts of formal charges against respondent. Respondent answered the formal charges and admitted much of his misconduct, but asserted that numerous mitigating factors were applicable. Prior to a hearing on the formal charges, respondent and the ODC stipulated to ten counts of the formal charges.[1] The stipulation includes the following facts and rule violations:

The Spell Matter

Respondent stipulated that Adrian Spell paid him $5,000 to handle a child custody matter. Respondent’s office accepted an additional payment of $1,000 in September 2013, although it was understood that respondent would likely be out of practice due to his interim suspension. Mr. Spell had to retain other counsel. Respondent acknowledged that he failed to zealously prosecute Mr. Spell’s case and that Mr. Spell is entitled to a full refund of unearned fees. Respondent also acknowledged his responsibility for the actions of his office staff, who, in his absence, accepted payment from Mr. Spell. The funds paid by Mr. Spell remain unaccounted for. Respondent has since made full restitution to Mr. Spell.
Respondent stipulated that his conduct in the Spell matter violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.15 (safekeeping property of clients or third persons), 1.16 (obligations upon termination of the representation), 5.3 (failure to properly supervise a non-lawyer assistant), and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.
| ¿The Meaux Matter
Respondent stipulated that in June 2013, Harris Meaux hired him to handle a custody and child support matter, for which he was paid a $3,500 deposit. Thereafter, respondent performed little to no services in the matter. Respondent acknowledged that he failed to zealously prosecute the case. Respondent also acknowledged that he converted the funds paid to him by Mr. Meaux.
Respondent stipulated that his conduct in the Meaux matter violated Rules 1.3, 1.15, 1.16, and 8.4(a) of the Rules of Professional Conduct.

The Scholl Matter

Respondent stipulated that in August 2013, he was hired by Courtney Ann Scholl to represent her in connection with DWI and possession of marijuana charges, for which he was paid $1,250. Thereafter, respondent performed little to no services in the matter. Respondent acknowledged that he failed to zealously prosecute the case. Respondent also acknowledged that he converted the funds paid to him by Ms. *318 Scholl. He has since made full restitution to Ms. Scholl.
Respondent stipulated that his conduct in the Scholl matter violated Rules 1.3, 1.15,and 1.16 of the Rules of Professional Conduct.

The Jenkins Matter

Respondent stipulated that he was retained to represent Donald Jenkins in a community property partition action that had been pending for many years. Respondent was paid $3,500 to handle the matter and represented Mr. Jenkins through trial. Thereafter, respondent failed to follow up on the preparation of a qualified domestic relations order. Although he did not have billing records in the matter, respondent agreed that $474.07 of Mr. Jenkins’ payment remained unearned. Respondent has since made full restitution to Mr. Jenkins.
| ¿Respondent stipulated that his conduct in the Jenkins matter violated Rules 1.3, 1.15,and 1.16 of the Rules of Professional Conduct.

The George Matter

Respondent stipulated that in August 2013, Edwin George paid him $3,500 to represent him in a divorce instituted by his wife. Respondent admitted that he neglected the matter, noting that although he prepared an answer to the petition, nothing was ever filed. Respondent testified that he converted at least $3,200 in connection with this matter.
Respondent stipulated that his conduct in the George matter violated Rules 1.3, 1.15,1.16, 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

The Dufrene Matter

Respondent stipulated that Michael Du-frene hired him to handle his divorce, for which he was paid $1,000. While he did not have billing records in the matter, respondent agreed that $520 of Mr. Dufrene’s payment remained unearned. Respondent acknowledged that he neglected the matter and converted the unused portion of the fee. He has since made full restitution to Mr. Dufrene.
Respondent stipulated that his conduct in the Dufrene matter violated Rules 1.3, 1.15,and 1.16 of the Rules of Professional Conduct.

The Thompson Matter

Respondent stipulated that in August 2013, he was hired by Audley Joseph Thompson to handle a child custody matter, for which he was paid $2,000. Before respondent began to perform any work, Mr. Thompson was advised to retrieve his file as respondent could no longer handle the matter. Respondent admitted that he | ¡^converted the $2,000 paid by Mr. Thompson and did nothing in connection with the representation. He has since made full restitution to Mr. Thompson.
Respondent stipulated that his conduct in the Thompson matter violated Rules 1.3, 1.15,and 1.16 of the Rules of Professional Conduct.

The Phillips Matter

Respondent stipulated that in March 2012, he was hired by Dale Phillips to settle a community property matter, for which he was paid $1,500. Respondent acknowledged that he failed to zealously prosecute the case and misused the funds he received. During respondent’s absence, his non-lawyer assistants placed all monies received into his operating account, rather than his trust account. He has since made full restitution to Mr. Phillips.
Respondent stipulated that his conduct in the Phillips matter violated Rules 1.16, 5.3, and 8.4(a) of the Rules of Professional Conduct.

*319
The Rollman Matter

Respondent stipulated that in January 2013, he was retained by Clay Rollman to handle a divorce and child custody matter, for which he was paid a total of $6,000. Subsequent to the divorce, which was completed, Mr. Rollman continued to experience problems with his ex-wife, who repeatedly violated the custody agreement. Respondent advised that a rule for contempt should be filed, but he did not represent Mr. Rollman zealously on this issue. Respondent acknowledged that $1,000 of the funds he received were not properly utilized, but noted that he was not in the office when the balance of $802.79 was misapplied. During his absence, respondent’s non-lawyer assistants placed all monies received into his operating account, rather than his trust account. He has since made full restitution to Mr. Rollman.
| (¡Respondent stipulated that his conduct in the Rollman matter violated Rules 1.3, 1.15, 1.16, and 5.3 of the Rules of Professional Conduct.

The Brmm Matter

Respondent stipulated that in April 2013, Shirley Ann Brown paid him $2,500 to represent her in a divorce proceeding. Respondent admitted that a balance of $1,685.31 was owed to Ms. Brown for unearned fees and that this unused portion was not refunded to Ms. Brown. During his absence, respondent’s non-lawyer staff placed monies received into his operating account, rather than his trust account. In October 2015, respondent tendered a payment of $100 to Ms. Brown, and he continues to make monthly restitution payments to her.
Respondent stipulated that his conduct in the Brown matter violated Rules 1.3, 1.15, 1.16, 5.3, 8.4(a), and 8.4(d) of the Rules of Professional Conduct.

Formal Hearing

The hearing committee conducted a formal hearing in June 2016. During the hearing, the committee heard testimony concerning the events leading up to respondent’s depression, including the death of his grandfather in 2012 and the death of his grandmother in January 2013; his close friend’s cancer diagnosis in 2011, treatment in 2012, and death in 2013; his 50th birthday; the termination of the partnership with his law partner in 2012; and a personal toxic relationship which began in January 2013.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee accepted the joint stipulation of facts and rule violations filed by the parties. The committee also made the following additional findings:
17Pr. Brian Murphy, a licensed psychologist who evaluated respondent, stated that during his depression, respondent was able to discern right from wrong, but since he was so preoccupied with his misery, his judgment was impaired and his thinking was off-centered. In 2014, respondent had another major depressive episode which was of shorter duration and did not require hospitalization. In Dr. Murphy’s opinion, the two depressive events were caused by outside sources and situations, rather than by a chemical depression. There was no evidence presented of any other major depressive episodes since the 2014 episode.
Respondent testified that during his depression, he was not thinking about the effects of his actions. Respondent stated that he would just write checks so that his office manager would stop bothering him for checks. Respondent testified that the 2014 episode was triggered by the result of the disciplinary complaints being made against him for his misconduct. Respon *320 dent testified that he received therapy after his impatient stay at Ridgeview, although no reports from any counselor or therapist were introduced as evidence. The committee found insufficient evidence to establish that respondent had a gambling problem or that substance abuse had any bearing on the violations or on his depression.
Prior to his depression, respondent was a caring and committed lawyer who worked hard for his clients. Many loyal clients and professional colleagues vouched for his good character as a person and for his skill as a lawyer.
Respondent presently works as a paralegal. Two of his employers testified about his work following his treatment at Ridge-view. They had known respondent for many years and chose to work with him after his treatment. Both testified that he was a diligent and hard worker and that he did not exhibit the behaviors they saw in him just prior to his 2013 treatment. Neither employer had any issues or problems with his work product or work ethic while he was in their employment. In their view, respondent has been an exemplary employee.
|sThe committee determined respondent violated duties owed to his clients by neglecting their cases and by failing to return unearned fees. These actions also violated respondent’s duties to the legal system, the public, and the legal profession. His misconduct caused actual injury to multiple clients, particularly in his conversion of client funds and his failure to supervise his staff. Respondent has made restitution to some clients, but not all converted funds have been repaid.
In aggravation, the committee found multiple offenses, all of which took place within a relatively short period of time, and substantial experience in the practice of law (admitted 1991). In mitigation, the committee found the absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, full and free disclosure to the disciplinary board, character or reputation, mental disability when the disability caused the misconduct, and remorse. The committee noted that while respondent testified that he was making restitution to rectify the consequences of his misconduct, and the ODC stipulated that he had made restitution to some clients, there was no evidence presented about the timeliness of the restitution or payments made for partial or full restitution.
After further considering this court’s prior jurisprudence addressing similar misconduct, the committee recommended respondent be suspended from the practice of law for three years.
Neither respondent nor the ODC filed an objection to the hearing committee’s report.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the factual findings of the hearing committee are not manifestly erroneous and are supported by the stipulations of the parties and the evidence in the record. The board also | ^determined that the Rules of Professional Conduct were violated as set forth in the joint stipulation submitted by the parties.
The board determined respondent knowingly violated duties owed to his clients by neglecting their legal matters, by failing to promptly return unearned fees, and by converting client funds. These actions also violated duties owed to the legal profession and the public. Respondent caused actual harm by delaying the resolution of his clients’ legal matters and by depriving them of their funds. His neglect of client matters also created the potential for further harm. After reviewing the ABA’s *321 Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is disbarment.
The board agreed with the aggravating factors found by the committee. In mitigation, the board found the absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and remorse.
The board agreed with the committee in recognizing the mitigating factor of mental disability.[2] The ODC did not challenge this finding. Expert testimony and documentary evidence established that respondent was clinically depressed when the misconduct occurred, and the evidence supports that this mental disability |1ncaused his misconduct. Dr. Murphy testified that it was reasonable to conclude that respondent’s depression caused his misconduct, and, in his opinion, respondent’s mental disorder was an explanation for the misconduct. All of the misconduct occurred over a three to four-month time period, and respondent had no history of engaging in such behavior. Respondent quickly sought treatment for his severe depressive episode once confronted by friends and colleagues.
After reviewing prior jurisprudence involving similar misconduct, and considering the mitigating factors, the board recommended respondent be suspended from the practice of law for three years, retroactive to the date of his interim suspension. The board also recommended respondent be ordered to make restitution to his clients and/or the Client Assistance Fund. The board further recommended that respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held *322 the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/26/96), 683 So.2d 714; In re: Pardue, 93-2866 (La. 3/11/94), 633 So.2d 150.
InRespondent has stipulated that he engaged in professional misconduct, including the neglect of his clients’ legal matters, failure to refund unearned fees, and failure to properly supervise his non-lawyer staff. In doing so, respondent has violated the Rules of Professional Conduct as set forth in the joint stipulation submitted by the parties. Therefore, the sole question presented for our consideration is the appropriate sanction for this misconduct,
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984).
The record supports a finding that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His misconduct was grossly negligent, if not knowing, and caused actual harm. The aggravating and mitigating factors found by the disciplinary board are supported by the record.
In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La. 1986), the court set forth guidelines for imposing discipline in a conversion case:
In a typical case of disbarment for violation of [Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of | ^negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
A suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.
A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, *323 usually before any legal proceeding or disciplinary complaint is made.
Hinrichs, 486 So.2d at 122-123 (citations omitted).
Applying the guidelines of Hinrichs, we agree that the appropriate sanction in this case is a three-year suspension. Respondent’s misconduct occurred over a period of three months, during- a time that he was severely depressed. There is no indication that respondent acted in bad faith or that he intended a, result inconsistent with his clients’ interests. As soon as he was confronted by friends and colleagues about his behavior, respondent sought treatment and self-reported his misconduct to the ODC. Although he has not made complete restitution, respondent has made and continues in good faith to make payments to his former clients and the Louisiana State Bar Association’s (“LSBA”) Cli&it Assistance Fund.
This sanction is further supported by our decision in In re: Scott, 09-2364 (La. 4/5/10), 32 So.3d 789, wherein we imposed a three-year suspension upon an attorney who converted more than $50,000 of his client’s workers’ compensation | ^settlement funds to his own use during a time of extreme stress when his wife was diagnosed with uterine cancer and while he and his son were suffering from shoulder problems. We determined that the attorney had acted intentionally and committed a dishonest act by misleading his client as to the status of his settlement funds; however, there were several mitigating factors present.
Based on this jurisprudence, and in light of the compelling mitigating factors present, we will adopt the disciplinary board’s recommendation and suspend respondent from the practice of law for three years, retroactive to October 21, 2013, the date of his interim suspension. We will also order respondent to pay restitution to his clients and/or to reimburse the LSBA’s Client Assistance Fund as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that James E. Moor-man, III, Louisiana Bar Roll number 20528, be and he hereby is suspended from the practice of law for a period of three years, retroactive to October 21, 2013, the date of his interim suspension. It is further ordered that respondent shall make restitution of any unearned fees to his clients subject of the formal charges and/or reimburse the Louisiana State Bar Association’s Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The remaining count of misconduct stemmed from a disciplinary complaint filed by Gerald Dahlem, wherein he alleged respondent neglected his legal matter and failed to return the unearned portion of his fee. Respondent denied any misconduct in connection with Mr. Dahlem’s complaint. Following the formal hearing in this matter, the hearing committee found no misconduct related to the Dahlem complaint. The disciplinary board agreed with this finding, and the ODC did not object to the committee’s finding in any respect. Therefore, we will make no further reference to the Dahlem matter in this opinion.

. In order to prove the mitigating factor of mental disability, ABA Standard 9.32(i) provides the lawyer must prove the following four factors by clear and convincing evidence: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent’s recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. See In re: Stoller, 04-2758 (La. 5/24/05), 902 So.2d 981.
The commentary to Standard 9.32 emphasizes the "careful analysis” that is required in considering issues of mental disability offered as mitigating factors in disciplinary proceedings, and that "direct causation between the disability" and the misconduct must be established. The commentary further discusses the weight to be assigned to this factor, indicating that "the greatest weight” should be assigned when the disability is the sole cause of the offense. If the disability is the principal cause of the offense, it should be given "very great weight”; if it is a substantial contributing cause of the offense, it should be given “great weight.” In all other cases in which the disability is considered as mitigating, the commentary indicates it should be given "little weight.”