ATTORNEY DISCIPLINARY PROCEEDING . PER CURIAM , | iThis disciplinary, matter arises from formal- charges filed by the Office of Disciplinary. Counsel (“ODC”) against respondent, Timmy James Fontenot, an attorney licensed to practice law in Louisiana. UNDERLYING FACTS Francis-and Ellen Ortego were involved in a motorcycle accident on - June 26, 2006. The other driver involved in the accident, Calvin Guillory, was insured by Progressive Security Insurance Company (“Progressive”) with ' policy limits of $100,000. The Ortegos attempted to negotiate a settlement with Progressive, but they were unsuccessful as they were interested in receiving policy limits and Progressive’s settlement offer was only $51,000. They then retained respondent, a close family friend, to represent them in the matter. The Ortegos agreed to pay respondent a contingency fee of one-third of any settlement they received in excess of $51,000. This agreement was not reduced to writing. In 2007, respondent filed a lawsuit on behalf of the Ortegos in the 13th Judicial District Court for the Parish of Evangeline against Mr. Guillory and Progressive. Lafayette attorney Ian Macdonald represented the defendants. | ¿Respondent negotiated a settlement with Progressive in the amount of $52,500.[1] The Ortegos were not aware of the settlement and did not consent to it. On April 24, 2008, Mr. Macdonald sent respondent a settlement check along with a release and a joint motion to dismiss. Respondent signed his clients’ names on the release and executed the motion to dismiss, then returned the documents to Mr. Macdonald. Respondent deposited the settlement check into his client trust account on May 6, 2008. Unbeknownst to the Ortegos, their lawsuit was dismissed on November 3, 2008. By late 2012 or early 2013, Mr. Ortego had begun to question respondent about the status of the case. Respondent falsely informed Mr. Ortego that Progressive was willing to settle the matter for the policy limits of $100,000, but wanted to pay the settlement over a period of time in four payments. Mr. Ortego rejected a four-installment payment plan, but he did inform respondent that he was willing to accept one-half of the settlement -as long as he was paid the remainder by the end of 2013. On February 28, 2013, respondent issued a check drawn on his client trust account payable to Mr. Ortego in the amount of $50,000. Mr. Ortego asked whether he would be required to sign anything for the insurance company, and respondent told him that he would not. On December 20, 2013, respondent issued a trust account check in the amount of $33,333.33 to Mr. Ortego and wrote “Full and Final Settlement” on the memo line of the check.[2] In January 2014, Mr. Ortego consulted Ville Platte attorney Kathy Fontenot-Meyers regarding the settlement. Ms. Fontenot-Meyers contacted Mr. Mac-donald and requested copies of the settlement documents. After reviewing the documents,_J¿¡Ms. Fontenot-Meyers informed Mr. Macdonald that the settlement proceeds that were paid to the Ortegos were not disbursed until five years after the settlement. She also indicated that respondent told the Ortegos that Progressive was paying the settlement quarterly, and that the Ortegos could not confirm that the signatures on the settlement release were their own. In February 2014, Mr. Macdonald filed a complaint against respondent with the ODC. In December 2014, the ODC received a complaint from the Ortegos. In his response to the complaint, respondent stated that when the case settled in April 2008, he signed the settlement documents with the implied permission of the Orte-gos. Respondent further admitted that he acted improperly and explained that at the time of the settlement, he was involved in a very bitter, highly contested and protracted divorce that also involved four children. After receiving respondent’s response, the ODC requested a copy of his client trust account records and his client file. A review of this information indicates that respondent made at least four checks payable to “cash” from his trust account—two written in June 2010 and two written in November 2011. No documentation exists in the client file regarding the distribution of the funds. Respondent accepted a settlement of $52,500 contrary to his clients’ wishes and without their knowledge or consent. The Ortegos specifically were not aware that respondent received settlement proceeds from Mr. Macdonald in April 2008; they did not sign the release forms sent to respondent by Mr. Macdonald; and he dismissed their lawsuit without their consent. The ODC alleges that respondent’s actions in this matter constitute a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(c) (a contingent fee agreement shall be in writing), 1.15(f) (cash withdrawals and checks made payable to “cash” are prohibited on client trust accounts), 8.4(a) | ¿(violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).[3] DISCIPLINARY PROCEEDINGS In October 2015, the ODC filed formal charges against respondent as set forth above. Respondent, through counsel, answered the formal charges and generally admitted the factual allegations therein; however, he denied telling the Ortegos that Progressive would pay their settlement quarterly. Respondent also denied forging the Ortegos’ signatures on the settlement documents. He admitted that he signed the Ortegos’ names on these documents; however, he stated that he believed he had their authority and permission to do so. Respondent admitted that he violated Rules 1.3,1.4,1.5(c), and 1.15(f) of the Rules of Professional Conduct, but denied violating Rules 8.4(a), 8.4(b), and 8.4(c).[4] This matter then proceeded to a formal hearing on the merits conducted by the hearing committee on January 25, 2017. Both parties introduced documentary evidence. The ODC called the following witnesses to testify before the hearing committee: Kathy Fontenot-Meyers, Ian Macdonald, and Francis and Ellen Ortego. Respondent did not call any witnesses; however, he testified on his own behalf and on cross-examination by the ODC. | r,Hearing Committee Report After reviewing the testimony and the evidence presented at the hearing, the hearing committee made the following findings of fact and law: 1. On February 19, 2014, the ODC received a complaint from Ian Mac-donald. Mr. Macdonald represented Calvin Guillory and Progressive in a personal injury action brought by Francis and Ellen Ortego. 2. , The Ortegos were involved in a June 26, 2006 motor-vehicle accident, and respondent represented the Ortegos in the personal injury lawsuit, 3. The Ortegos attempted to negotiate a settlement with Progressive on their own, 4. Progressive offered the Ortegos a settlement of $51,000, which the Ortegos rejected. ■5. The Ortegos were aware- that the policy limits were $100,000. 6. The agreement between the Ortegos and respondent for attorney’s fees indicated respondent would earn one-third of any settlement in excess ‘ of $51,000, 7. The contingency fee agreement was not reduced to writing. {Violation of Rule 1.5(c)} 8. Respondent negotiated a settlement with Progressive and Mr. Guillory in the amount of $52,500- {Violation of . Rule 8.4(a) as to violating or at- . tempting to violate the Rules and Rule 8.4(c) as to deceit or misrepresentation} 9. -On April 24, 2008, Mr. Macdonald sent respondent the settlement proceeds along . with a Release of All Claims and a Joint Motion and Order to Dismiss. 10. Respondent returned the executed Release of; All Claims [purportedly] signed by the Ortegos and the executed Joint Motion and Order to Dismiss. {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping the client [(¡reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules; and Rule 8.4(c) as to deceit or misrepresentation} 11. -The dismissal was filed on October 30, 2008, and the suit was-dismissed on November 3, 2008. {Violation of Rule 8.4(a) as to violating or attempting to violate the Rules and Rule 8.4(c) as to deceit or misrepresentation} 12. On January 14, 2014, Mr. Mac-. . donald received correspondence from another attorney, Kathy Fon-tenot-Meyers, who informed Mr. Macdonald, that the settlement proceeds, were not disbursed to the Ortegos until five years after the settlement. 13. Respondent told the Ortegos that Progressive was paying the settlement quarterly. {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping .the client reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules; and Rule 8.4(c) as to deceit or mis- ' representation} 14. Respondent forged the Ortegos’ signatures, {Violation of Rule 8.4(a) as to violating or attempting to violate the Rules and Rule 8.4(e) as to deceit or misrepresentation} 15. Respondent paid the Ortegos $38,333,33 on December 20, 2013, though Mr. Macdonald sent him the settlement proceeds on April 24, 2008. {Violation of Rule 1,3 as ■ to diligence; Rule 1.4 as to keeping the client reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules; and Rule 8.4(c) as to deceit or misrepresentation} 16.' Respondent’s trust account records indicate respondent made at least four checks payable to “cash” from his trust account. {Violation of Rule 1.15(f) as to checks drawn on client trust accounts made payable- to “cash" prohibited} a. The bank statement ending on June 30, 2010 indicates checks 1381 and 1382 were made payable to “cash”; and Jjb. The bank statement ending on November 30, 2011 ' indicates checks 1471 and 1472 were made payable to “cash.” 17. Respondent informed Mr. Ortego in March 2013 that Progressive was willing to settle the matter for $100,000, but wanted to pay the settlement over a period of time in four payments. {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping the client reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules;, and Rule 8.4(c) as to deceit or misrepresentation} 18. Mr. Ortego was unwilling to accept four payments, but he would accept one-half of the settlement as long as he was paid the remainder by the end of the year 2013. 19. On February 28, 2013, respondent issued a trust account check to Mr. Ortego in the amount of $50,000. {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping the client reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules; and Rule 8.4(c) as to deceit or misrepresentation} 20. On December 20, 2013, respondent issued a trust account check to.Mr, Ortego in the amount of $33,333.33 and wrote “Full and Final -Settlement” on the memo line of the check. {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping the client reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules; and Rule 8.4(c) as to deceit or misrepresentation} 21.Respondent accepted a settlement of $52,500 contrary to his clients’ wishes and without their knowledge or consent, {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping the client reasonably informed; Rule 8.4(a) as to violating or .attempting to violate the Rules; and Rule 8.4(c) as to deceit or misrepresentation} b22. The Ortegos were not. aware, nor made aware, that their matter settled in 2008 for $52,500; they did not sign the release forms sent to Mr. Macdonald by respondent; and they were not aware that respondent dismissed their lawsuit, • as he did so without their consent. {Violation of Rule 1.3 as to diligence; Rule 1.4 as to keeping the client reasonably informed; Rule 8.4(a) as to violating or attempting to violate the Rules; and Rule 8.4(c) as to deceit or. misrepresentation} . The committee did not address the violation of Rule 8.4(b) alleged-in the formal charges. The committee determined that respondent violated duties owed to his clients, the public, the legal system, and the profession. His conduct was intentional. He settled his clients’ legal matter without their consent and forged their names- on the settlement check and release documents. He lied to and misled his clients-regarding the amount of the settlement. Finally, although he settled the matter in 2008 and dismissed their lawsuit without permission, respondent did not pay the settlement proceeds to his clients until 2013. This conduct caused actual and serious harm to the Ortegos, who lost their home, and business and went bankrupt. The applicable baseline sanction in this matter is disbarment. In aggravation, the committee found the following factors: a prior disciplinary record,[5] a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. In mitigation, the committee recognized that respondent was going through a divorce at the time of the misconduct. ^Considering the facts of this case, in particular the financial harm that befell the Ortegos in the five years they did not have access to their settlement funds, the hearing committee recommended respondent be disbarred. Respondent filed an objection to the severity of the sanction recommended by the hearing committee. He urged that a three-year sanction is appropriate under the circumstances. Disciplinary Board Recommendation After review, the disciplinary board found that the hearing committee’s factual findings are not manifestly erroneous and are supported by the record. Furthermore, neither party objected to the committee’s factual findings. Accordingly, they were adopted by the board. Based on these facts, the board determined that the committee correctly applied the Rules of Professional Conduct to determine that respondent violated Rules 1.3, 1.4, 1.5(c), 1.15(f), 8.4(a), and 8.4(c). While the formal charges also allege a violation of Rule 8.4(b) in regard to the claim that respondent forged his clients’ signatures on the settlement check and documents, the committee failed to discuss this rule. Respondent testified that he believed he had implied authority to sign for his clients. On the other hand, Mr. Ortego testified that he never gave respondent permission to sign on his behalf. Because it specifically found that respondent had forged his clients’ signatures, the committee apparently believed Mr. Ortego’s testimony and rejected respondent’s testimony. Given the clear finding by the committee that respondent forged his clients’ signatures, the board concluded a violation of Rule 8.4(b) has been established. The board determined that respondent violated duties owed to his clients, the public, and the legal profession. He acted intentionally. He settled his clients’ case 1 ^without their consent, forged his clients’ signatures and purposefully misled his clients, despite their repeated inquiries. While respondent was not specifically charged with converting the funds to his own use, he failed to disburse the Ortegos’ settlement proceeds for more than five years during a period of time when they were experiencing significant financial struggles. The board agreed with the committee that respondent caused serious and actual harm to his clients, who lost their home and business and went bankrupt. Respondent’s failure to reduce the contingent fee agreement to writing was knowing, if not intentional, as was his conduct in making cash withdrawals from his client trust account. The applicable baseline sanction for the various misconduct at issue in this case is suspension or disbarment. The board adopted the aggravating and mitigating factors found by the committee. In mitigation, the board also considered respondent’s efforts, albeit delayed, to rectify the consequences of his misconduct by making a payment of $33,383.33- to the Ortegos in December 2013. After this payment, the Ortegos received a total of $83,333.33, representing the amount they would have received had their case been settled for the full policy limits of $100,000, less the agreed one-third contingency fee. The board then turned to an analysis of this court’s prior jurisprudence addressing similar misconduct, and found this case is similar to In re: Scott, 09-2364 (La. 4/5/10), 32 So.3d 789. In that case, Mr. Scott reached a settlement agreement for $75,000 on behalf of a client in a workers’ compensation matter. Rather than disbursing the entirety of the funds as ordered, he deducted his own fee, made a partial distribution to the client, and offered the false excuse to the client that he was attempting to secure the remainder of the funds. Instead, Mr. Scott used the funds to pay personal and business obligations. After three months, the client complained, and when confronted by the judge, Mr. Scott acknowledged that he had improperly retained the client’s funds. Mr. Scott essentially stipulated to the facts and violations Inpf Rules 1.3, 1.4, 1.15, and 8.4(c). After noting the baseline sanction of disbarment for respondent’s intentional and dishonest conduct, the court deviated downward from the baseline due to the extensive mitigating factors present and imposed a three-year suspension. The board noted that although the facts of this case and the Scott case are alike, there is some variation in the charged Rule violations. Here, respondent was not charged with a violation of Rule 1.15 (conversion), but he was charged with engaging in criminal conduct in violation of Rule 8.4(b) inasmuch as he forged his clients’ signatures on the settlement documents. Furthermore, relative to harm, it is notable that the duration of the deprivation in Scott was three months whereas the Orte-gos were deprived of their funds for more than five years. Finally, the evidence shows that the Ortegos were experiencing significant financial troubles at the time that respondent withheld the money owed to them. ■ The board was most troubled by respondent’s dishonesty. He settled the Ortegos’ case for $52,500 in 2008, but failed to make any payment to his clients until he issued a $50,000 check to them on February 28, 2013. Even on that date, however, respondent had not yet disclosed to his clients that he had settled their case; he tried to hide the facts and told them further untruths. Given the circumstances of this case and respondent’s prior discipline in Fontenot I, which also involved misrepresentation, the board agreed with the committee that disbarment is warranted. Based on this reasoning, the board recommended that respondent be disbarred. The board also recommended that respondent be assessed vrith the costs and expenses of this proceeding. Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation. I ^DISCUSSION Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the' record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La. 3/11/94), 633 So.2d 150. Respondent represented his clients in a personal injury matter. He subsequently settled the case without their consent, forged their signatures on the settlement documents, misled them as to the status of the. case, and failed to disburse the settlement proceeds for five years. He also failed to reduce the contingent fee agree: ment to writing and made cash 'withdrawals from his client trust account. This conduct constitutes, a violation of the Rules of Professional Conduct as charged in the formal charges. Haviiig found evidence of professional misconduct, we now tuín tp a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the. offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984). haWe agree with the board that respondent’s conduct in handling his clients’ personal injury case was intentional. The misconduct relating to the contingent fee agreement and the cash withdrawals from the trust account was at least knowing, if not intentional. Respondent violated duties owed to his clients, the public, and the legal profession. We also agree that he caused significant actual harm to his clients, who lost their home and business and went bankrupt, during the time that they did-not have access to their settlement funds. For the heartland of the misconduct at issue in this matter, the applicable baseline sanction is disbarment. The aggravating and mitigating factors found by the board are supported by the record. In addition, the record suggests that the mitigating factor of remorse-is present. ■ Notwithstanding the presence of mitigating'.factors, we see no reason to deviate from the baseline sanction of disbarment. Respondent’s- conduct was clearly intentional. He settled his clients’- case without informing them, forged their signatures on the settlement documents, purposefully misled them as to the status of the case, despite their repeated inquiries, and failed to disburse their settlement funds for five years. This type of deception cannot be tolerated by attorneys; Moreover, respondent has previously been disciplined for misconduct which included -misrepresentation, suggesting that the fully deferred suspension imposed in Fontenot I did not have the intended effect of reforming respondent’s behavior. Accordingly, we will disbar respondent. DECREE Upon review of the findings and recommendations of the hearing committee and disciplinary board,’ and considering the record, it is ordered that Timmy James Fontenot, Louisiana Bar Roll number 23738, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and -his license to practice law in 114the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid. . The settlement included a payment of $50,478 to the Ortegos and a total of $2,022 to two medical providers. . The sum of $33,333.33 was paid by respondent to Mr. Ortego from his fee earned in another case. The total amount received by the Ortegos, $83,333.33, is equal to what they would have received had their personal injury case been settled for the full policy limits of $100,000, less payment of the contingency fee owed to respondent. . During the hearing before the hearing committee, the ODC stipulated that respondent has not been charged with conversion of the Ortegos’ settlement funds. , In his pre-hearing memorandum, however, respondent did not dispute that he violated Rules 8.4(a) or 8.4(c). . In In re: Fontenot, 11-0989 (La. 6/17/11), 63 So.3d 130 ("Fontenot I”), this court accepted a petition for consent discipline and suspended respondent from the practice of law for one year, fully deferred, subject to a two-year period of supervised probation. The misconduct at issue in that matter involved allegations that respondent neglected a legal matter, failed to communicate with a client, charged an excessive fee, and made misrepresentations.