PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Timmy James Fontenot, a disbarred attorney.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1995.
In 2011, we considered a joint petition for consent discipline filed by respondent and the ODC wherein respondent acknowledged that he neglected a legal matter, failed to communicate with a client, charged an excessive fee, and made misrepresentations. We accepted the petition for consent discipline and suspended respondent from the practice of law for one year, fully deferred, subject to two years of supervised probation. In re: Fontenot , 11-0989 (La. 6/17/11), 63 So.3d 130 (" Fontenot I ").
In October 2015, the ODC filed formal charges against respondent, alleging that he settled a personal injury case for $52,500 without his clients' consent, forged his clients' signatures on the settlement documents, misled his clients as to the status of the case, failed to disburse the settlement proceeds to his clients for five years, failed to reduce the contingency fee agreement to writing, and made cash withdrawals from his client trust account. In November 2017, we disbarred respondent for this misconduct. In re: Fontenot , 17-1661 (La. 11/28/17), 230 So.3d 185 (" Fontenot II "). Respondent will not be eligible to apply for readmission to the practice of law until 2022.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the instant proceeding.
FORMAL CHARGES
On January 7, 2013, respondent and attorney Marcus Fontenot[1] entered into a contract to provide legal services to Evangeline Construction & Trucking, LLC ("the client") with respect to the BP oil spill. On January 9, 2013, respondent and Mr. Fontenot referred the matter to the Fayard & Honeycutt law firm ("the firm") with the client's permission and knowledge. The firm designated respondent as the lead attorney to communicate and assist with the client's contact data and information. With the help of respondent and Mr. Fontenot, the firm pursued a claim in the Deepwater Horizon Court Supervised Settlement Program on behalf of the client.
In April 2016, the firm received a settlement offer, which had been negotiated *1011 through the court-appointed neutrals' opt-out and exclusions confidential settlement program. Respondent presented the settlement offer to the client, and the client accepted the offer, signing the formal release on April 19, 2016. BP ratified the settlement offer on May 14, 2016.[2]
The settlement funds were subsequently wired to the firm's trust account. The firm then prepared the final disbursement sheet, release, and dismissal of the client's action. On June 1, 2016, the funds were disbursed according to the final disbursement sheet. The client's portion of the settlement check was made payable directly to Evangeline Construction & Trucking, LLC. The client's settlement check, the disbursement sheet, and the check for attorney's fees were then forwarded to respondent. The firm's trust account records indicate that the checks cleared the account in June 2016.
On July 27, 2016, Mr. Fontenot called the firm to inquire about the status of the funding of the client's settlement. The firm informed Mr. Fontenot that it had sent $275,214.02 in client settlement funds along with all appropriate disbursement and settlement documents to respondent on June 1, 2016. Thereafter, the firm called the client and learned that respondent had issued the client a check for $200,214.02 instead of $275,214.02. The firm then learned respondent had forged the client's name on the back of the firm's trust account check made payable to the client and deposited the check into his trust account. The firm also learned that, when respondent issued the $200,214.02 check to the client, respondent had the client sign a handwritten receipt acknowledging it had received the settlement check.
On July 28, 2016, attorney Blayne Honeycutt, a partner at the firm, instructed respondent to disburse the entire $275,214.02 immediately to the client, and respondent agreed to do so. On July 29, 2016, respondent advised Mr. Honeycutt that he had disbursed all funds in accordance with the disbursement sheet. Respondent also sent the firm and Mr. Fontenot a copy of his trust account check number 1771 in the amount of $275,214.02, which contained a copy of the client's signed acknowledgement that it had received these funds.
However, the firm later learned that respondent had copied the client's handwritten acknowledgment of receipt of funds from the $200,214.02 check and transferred it to the copy of his trust account check number 1771 in the amount of $275,214.02. Respondent's trust account check number 1771 in the amount of $275,214.02 never cleared the bank because it was only written by respondent to convince the firm and Mr. Fontenot that he had paid the client the entire settlement amount when he had, in fact, not done so.
When confronted with these findings, respondent indicated that he had not paid the client the entire amount because he simply did not have all the money in his trust account. Upon learning of respondent's actions, the firm and/or Mr. Fontenot contacted the client and asked it not to deposit the $200,214.02 check. Then, on August 1, 2016, Mr. Honeycutt and Mr. Fontenot deposited $75,000 into respondent's trust account and had respondent direct the bank to issue a cashier's check to the client in the amount of $275,214.02.
*1012 The client has now received all funds owed to it. However, respondent has never explained the whereabouts of the $75,000.
In August 2016, the firm and Mr. Fontenot filed disciplinary complaints against respondent. Respondent failed to provide written responses to the complaints, despite receiving notice of them.
On October 26, 2016, the ODC's investigator went to respondent's office to serve him with a subpoena and subpoena duces tecum. Respondent was not present to be served. Thereafter, the investigator contacted respondent on his cell phone, and respondent agreed to accept service of the subpoena and subpoena duces tecum via e-mail. The investigator e-mailed respondent the subpoena and subpoena duces tecum on November 3, 2016 at 10:11 a.m. Respondent confirmed receipt of the subpoena and subpoena duces tecum via e-mail to the investigator at 1:47 p.m. on November 3, 2016.
The ODC heard nothing from respondent until November 21, 2016 when it received a fax from him indicating he just realized he had a scheduling conflict with the November 22, 2016 sworn statement date. Thereafter, respondent faxed a written response to the complaints, denying the allegations in the complaints and attaching copies of the cashier's check paid to the client on August 1, 2016 and the settlement disbursement sheet.
In addition to failing to appear for the sworn statement scheduled for November 22, 2016, respondent failed to provide the documents (a copy of the client's file and a copy of his trust account bank statements from January 1, 2016 to present) requested in the subpoena duces tecum. The ODC sent respondent correspondence on November 29, 2016, informing him that his sworn statement needed to be rescheduled and that he was required to provide the documents pursuant to the subpoena duces tecum. Respondent never responded to this letter and never provided the requested documents.
Thereafter, the ODC reset respondent's sworn statement and issued another subpoena and subpoena duces tecum for February 23, 2017. Despite being personally served with the subpoena and subpoena duces tecum, respondent failed to appear on February 23, 2017 or produce any documents pursuant to the subpoena duces tecum. Instead, the ODC had to issue a subpoena duces tecum to the bank where respondent's trust account was located to obtain the requested bank records.
DISCIPLINARY PROCEEDINGS
In April 2017, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee *1013 written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration.
Hearing Committee Report
After considering the ODC's deemed admitted submission, the hearing committee made factual findings consistent with the deemed admitted factual allegations set forth in the formal charges. The committee additionally found that the record demonstrates respondent's failure to act with reasonable diligence and promptness in his representation of the client during the disbursement of the settlement proceeds. The client's settlement check was sent to respondent on or about June 1, 2016. However, the client did not receive all of the proceeds from the settlement until August 1, 2016, and then only after Mr. Honeycutt and Mr. Fontenot intervened to pay the $75,000 taken by respondent. Equally clear to the committee was respondent's failure to keep the client reasonably informed about the status of the settlement disbursement. Respondent's disbursement to the client of only $200,214.02 of the $275,214.02 due to the client and the client's handwritten acknowledgement of receipt of the lesser amount as the settlement of its claim demonstrate respondent's less than candid and honest representations to the client. Closely tied to respondent's violation of Rule 1.4 are his violations of Rules 8.1(a), Rule 8.4(b), Rule 8.4(c), and Rule 8.4(d). According to the committee, after learning that respondent had issued the client a check for $200,214.02 instead of $275,214.02, the firm discovered that respondent forged the client's signature on the firm's trust account check. Respondent then deposited the firm's check into his own trust account. When respondent's skullduggery was discovered, and he was instructed to disburse the settlement funds immediately, he agreed to do so. However, it is clear from the record that he had little intent, if any, to return the $75,000 and make a complete payout of all of the client's settlement proceeds. To assuage the firm's suspicions, respondent copied the client's handwritten acknowledgment of receipt of funds from the $200,214.02 check and transposed that acknowledgment to check number 1771 from his trust account in the amount of $275,214.02 before sending a copy of the check to the firm. Check number 1771 never cleared the bank, and the committee found it was only written to convince Mr. Honeycutt and Mr. Fontenot that respondent had done as instructed. The committee also found that respondent converted the $75,000 owed to the client, failed to disclose where the money went, and failed to repay Mr. Honeycutt and Mr. Fontenot the $75,000 the two paid the client to effect full payment of the settlement proceeds. The committee then found that respondent placed his self-interest above his client's interests. The forgery of the client's signature on its settlement check and the confection of false documents intended to hide respondent's conversion of the client's settlement proceeds is clearly prejudicial to the administration of justice. Furthermore, respondent clearly failed in his duty to fully cooperate with the ODC in its investigation into this matter. The clear and convincing evidence allows no validity to any claim of mistake on respondent's part. Moreover, the ODC has not been able to obtain respondent's sworn statement. Although required by subpoena to produce specified documents, respondent also failed to provide the ODC with a complete copy of the client's file, including all financial records relating to the client's representation and has failed to produce his trust account statements for January 1, 2016 to the present.
Based on these facts, the committee determined respondent violated the Rules of *1014 Professional Conduct as alleged in the formal charges. The committee then determined respondent intentionally violated duties owed to the client, the public, the legal system, and the legal profession. The committee also determined the baseline sanction is disbarment based upon the ABA's Standards for Imposing Lawyer Sanctions , as well as the sanction guidelines for misconduct involving conversion of client funds set forth in Louisiana State Bar Ass'n v. Hinrichs , 486 So.2d 116 (La. 1986), which provides in pertinent part:
In a typical case of disbarment for violation of DR 9-102, one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
In aggravation, the committee found the following: a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary board, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, substantial experience in the practice of law, and indifference to making restitution. The committee found no mitigating factors present.
Turning to the issue of an appropriate sanction, the committee considered this court's prior jurisprudence addressing similar misconduct and the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E. Although the committee determined none of the permanent disbarment guidelines were applicable, it noted the court has previously permanently disbarred attorneys whose conduct did not fall within the guidelines but was so egregious and without moral moorings that permanent disbarment was necessary to protect the public and maintain the high standards of the legal profession. See In re: Richard , 14-1684 (La. 10/3/14), 148 So.3d 923, and In re: Smith , 11-2007 (La. 12/2/11), 75 So.3d 902.
In light of the above, the committee recommended respondent be permanently disbarred. The committee further recommended respondent be ordered to make full restitution to Mr. Honeycutt and Mr. Fontenot.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
Disciplinary Board Recommendation
After noting that the factual allegations in the formal charges are deemed admitted and proven, the disciplinary board determined the hearing committee's factual findings are supported by the deemed admitted facts and by the evidence submitted in support thereof. Based on those facts, the board agreed with the committee that respondent violated the Rules of Professional Conduct as charged.
The board then determined respondent violated duties owed to the client, the public, and the legal profession. He acted knowingly and intentionally and has not yet accounted for, much less repaid, the $75,000 paid by Mr. Honeycutt and Mr. Fontenot to effect full payment of the settlement proceeds to the client. The board agreed with the committee that the baseline sanction is disbarment. The board also agreed with the committee's determination *1015 of aggravating factors. In additional aggravation, the board found illegal conduct. Lastly, the board agreed with the committee that the record supports no mitigating factors.
After further considering respondent's conduct in light of the permanent disbarment guidelines, the board recommended respondent be permanently disbarred. The board further recommended that respondent be ordered to pay full restitution to Mr. Honeycutt and Mr. Fontenot.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan , 01-3058 (La. 1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent forged his client's signature on a settlement check, converted $75,000 in client funds, misled his client and his co-counsel about the conversion, fabricated documents to conceal the conversion, failed to account for or make restitution of the converted funds, and failed to cooperate with the ODC in its investigation, including lying to the ODC in his written response to the disciplinary complaint. Respondent's misconduct is a clear violation of the Rules of Professional Conduct as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
In acting as he did, respondent intentionally violated duties owed to his client, the public (his co-counsel), the legal system, and the legal profession. His conduct caused actual harm, first to the client and then to his co-counsel, who have yet to be repaid the $75,000 they gave him to cover the funds he converted to his own use. We agree with the hearing committee and the disciplinary board that the baseline sanction for this type of intentional misconduct is disbarment.
Aggravating factors include a prior disciplinary record, a dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding by intentionally failing to *1016 comply with the rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, substantial experience in the practice of law, indifference to making restitution, and illegal conduct. The record does not support any aggravating factors.
Given that the baseline sanction is disbarment and that numerous aggravating factors are present, we considered respondent's conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E. While the facts suggest respondent's misconduct falls under Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) and Guideline 9 (instances of serious attorney misconduct or conviction of a serious crime when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime) of the permanent disbarment guidelines, after a careful review, we find the facts of this matter do not fit squarely within either of those guidelines. Because this matter addresses a single conversion of funds from a single client and not repeated or multiple instances of conversion, Guideline 1 does not apply. Likewise, Guideline 9 does not apply because the instant misconduct occurred prior to respondent's 2017 disbarment in Fontenot II .
Nevertheless, we note that the permanent disbarment guidelines are not intended to bind us in our decision-making, and we have imposed permanent disbarment in similar cases. For example, in In re: Smith , 11-2007 (La. 12/2/11), 75 So.3d 902, we permanently disbarred an already disbarred attorney who practiced law while ineligible to do so, settled his client's claim without her knowledge or consent, converted the settlement funds to his own use, and failed to cooperate with the ODC in its investigation. Although we noted that Guidelines 1 and 9 of the permanent disbarment guidelines did not apply in Smith for the same reasons they do not apply here, we, nevertheless, imposed permanent disbarment.
When respondent engaged in the instant misconduct, the ODC had already filed formal charges against him Fontenot II . Despite having received notice that his conduct addressed in Fontenot II was problematic, respondent engaged in the instant similar conduct by forging the client's signature on the client's settlement check and failing to disburse $75,000 of the client's funds to the client. Under these circumstances, it is highly likely respondent will continue to engage in this type of misconduct in the future if given the opportunity. Therefore, we find permanent disbarment is warranted in order to protect the public and maintain the high standards of the legal profession.
Accordingly, we will accept the board's recommendation and permanently disbar respondent. We will further order respondent to pay full restitution, with legal interest, to Mr. Honeycutt and Mr. Fontenot.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Timmy James Fontenot, Louisiana Bar Roll number 23738, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that *1017 respondent pay full restitution, with legal interest, to Blayne Honeycutt and Marcus Fontenot. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

The record does not indicate whether respondent and Marcus Fontenot are related.

This entire process is confidential by order of the federal court (MDL No. 2179, Rec. Doc. No. 15718). The ODC filed a motion to be relieved of the restrictions of the protective order in the BP litigation case (MDL No. 2179, Rec. Doc. No. 22394), and the ODC's motion was granted by order dated April 4, 2017 (MDL No. 2179, Rec. Doc. No. 22550).